UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIANNE L. S.[1],

                                                 Plaintiff,       19-CV-075-FPG
      v.                                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                 Defendant.
_____

**INTRODUCTION**

On January 6, 2016, Plaintiff filed an application for disability insurance benefits ("DIB") alleging disability beginning on December 1, 2015.  Tr.[2] at 140-43.  After the application was initially denied, Plaintiff timely requested a hearing.  Tr. 75.  On April 17, 2018, she appeared by video with her attorney, Lewis L. Schwartz, Esq., and testified before Administrative Law Judge Eric Eklund ("the ALJ").  Tr. 31-60.  A Vocational Expert ("VE"), Ralph E. Richardson, also testified at the hearing.  Tr. 54-59.  The ALJ issued an unfavorable decision on May 16, 2018.  Tr. 10-21.  Plaintiff then requested review by the Appeals Council, which the Council denied on November 30, 2018, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-4.  Subsequently, Plaintiff brought this action pursuant to Title II of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner which denied her application for DIB.[3]  ECF No. 1.  Presently before the Court are the parties' competing motions for judgment on the pleadings.  ECF Nos. 11, 13.  For the reasons set forth below, Plaintiff's motion for judgment

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by her first name and last initial.

[2] "Tr." refers to the administrative record in the matter.  ECF No. 8.

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

1

on the pleadings is DENIED, the Commissioner's motion for judgment on the pleadings is GRANTED, and the Commissioner's decision is AFFIRMED.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments,

the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the SSA on September 30, 2016. Tr. 12. At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of December 1, 2015 through

her date last insured of September 30, 2016. *Id*. At Step Two, the ALJ found that Plaintiff suffered from several severe impairments: degenerative joint disease of bilateral knees, obesity, edema of bilateral legs, status pulmonary embolus, and history of venous insufficiency. Tr. 13. He also found that Plaintiff's dermatitis of both legs, ulcers of the right leg, history of sleep apnea, migraines, and GERD, as well as depression were non-severe impairments. Tr. 13-15. At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing. Tr. 15-16. The ALJ then proceeded to determine that Plaintiff retained the RFC to perform a full range of sedentary work, except that she can never climb ladders, ropes, and scaffolds, crawl, squat, kneel, or operate foot controls with the right lower extremity. Tr. 16. He determined that Plaintiff could climb ramps and stairs 5% of every hour, occasionally balance, stoop, and crouch, and occasionally operate foot controls with her left lower extremity. *Id*. Lastly, the ALJ determined that Plaintiff must avoid extreme cold, heat, wetness, humidity, concentrated fumes, odors, dust, gases, concentrated chemicals, poorly ventilated areas, moving machinery, unprotected heights, sharp objects, and in environments with excessive noise without wearing ear protection. *Id*.

At Step Four of the sequential analysis, the ALJ found that Plaintiff could perform her past relevant work as a call center operator. Tr. 19. Although Plaintiff was able to perform her past relevant work, the ALJ proceeded to Step Five, where he made an alternative finding about the jobs available in significant numbers in the national economy that a person of Plaintiff's age, education, and work experience could perform. Tr. 20. Specifically, the ALJ found that Plaintiff could work as a bench worker, print circuit board screener, and electronic inspector. *Id.*

**II.     Analysis**

Plaintiff argues that the RFC determination was not supported by substantial evidence because the ALJ failed to properly consider her limitations in the adapting and managing oneself functional domain at Step Two of the sequential analysis, and failed to consider her depression and the need to elevate both legs in the RFC analysis. ECF No. 15-21. For the reasons that follow, the Court disagrees with Plaintiff and affirms the Commissioner's decision.

As a general matter, at Step Two of the sequential analysis, the ALJ is required to determine whether an impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1509, 404.1520(c). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b). Although Plaintiff bears the burden of proof at Step Two, it is not a heavy burden. The Second Circuit has long held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). Despite this lenient standard, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition 'severe.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 266 (N.D.N.Y. 2012) (internal citations omitted). "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled is

made at [Step Two] when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985). Such determination is made after the ALJ carefully evaluates the medical findings that describe the impairment and makes "an informed judgment about its limiting effects on the individual's physical and mental ability to perform basic work activities[.]" *Id.* at *4.

Here, the ALJ found that Plaintiff's depression was not a severe impairment because it did not cause more than minimal limitations in her ability to perform basic work activities. Tr. 13. In arriving at this conclusion, the ALJ primarily considered the opinion of the consultative examiner Dr. Ransom, who opined that Plaintiff had no difficulty following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concertation for simple tasks, maintaining a simple regular schedule, and learning simple new tasks. Tr. 304. She also opined that due to Plaintiff's mild unspecified anxiety disorder, Plaintiff would have very mild difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress. *Id*. Ultimately, Dr. Ransom determined that the results of Plaintiff's evaluation were consistent with a major depressive disorder currently in remission on medication and with a very mild unspecified anxiety disorder, both of which would not significantly interfere with her ability to function on a daily basis. Tr. 304-05. The ALJ afforded great weight to the opinion because even though she was not a treating source, Dr. Ramson had examined Plaintiff and had special knowledge of the extent of Plaintiff's impairments and ability to function. Tr. 14.

In determining that Plaintiff's depression was not a severe impairment, the ALJ considered the four areas of mental functioning set out by the disability regulations, also known as the

6

"paragraph B" criteria, and determined that Plaintiff had mild limitations in each of the four areas of mental functioning. Tr. 14-15; *see also* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00.A.2.b (brackets added) (the four criteria represent the areas of mental functioning a person uses in a work setting, such as ability to: [1] understand, remember or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself).

    Plaintiff does not explicitly argue that the ALJ failed to find her depression severe at Step Two, rather, she takes issues with the ALJ's analysis of the fourth area of functioning–ability to adopt and manage oneself–arguing that the ALJ erred when he failed to consider her inability to maintain personal hygiene.[4] ECF No. 11-1 at 17. However, her argument fails because the ALJ, after having assessed the medical and other objective evidence in the record, determined that Plaintiff's mental impairments caused no more than "mild" limitations in all four functional areas. Tr. 15; *see* SSR 85-28, 1985 WL 56856, at *3 ("[a]t the [S]econd [S]tep of sequential evaluation . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on [a claimant's] ability to do basic work activities"). The regulations provide that when the ALJ rates a claimant's mental limitation as "none" or "mild," the ALJ can find the claimant's impairment non-severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

> Generally, the fourth functional area of adapting or managing oneself
>
> refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to work setting; and being aware of normal hazards and taking appropriate precautions.

---

[4] Because Plaintiff does not object to the ALJ's analysis of the other three domains of mental functioning, the Court will only focus its analysis on the adapting or managing oneself domain.

7

20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00(E)(4).  Here, the ALJ determined that Plaintiff's limitations in this area of functioning were mild because she was able to handle self-care and personal hygiene, and because the objective evidence demonstrated that Plaintiff had appropriate grooming and hygiene, normal mood and affect, and had no problems with controlling her temper or getting along well with medical providers and their staff.  Tr. 15.  The Court does not find an error in the ALJ's analysis at Step Two because the record does not support Plaintiff's conclusion that her functioning in the adapting or managing herself domain was more limiting than was identified by the ALJ.

First, the record does not demonstrate that Plaintiff's hygiene was inadequate.  Neither during the hearing, nor at the time of her application for disability, did Plaintiff indicate having issues with her personal hygiene or self-care, or that such issues were the reason why she could not maintain employment.  Tr. 170.  Similarly, in the function report in support of her application for disability, Plaintiff did not identify having difficulties with her personal care, except for occasionally requiring help with putting her compression stockings on and off, and with shampooing and brushing her hair.  Tr. 181.  Because she had trouble getting in and out of the bathtub, Plaintiff used a shower to bathe.  *Id*.  Even though Plaintiff testified that she did not want to get dressed in the morning (Tr. 41), she also testified that her typical daily routine included getting dressed daily.  Tr. 46.  While the Court recognizes that the record contains notes of Plaintiff being morbidly obese and having strong body odor during her physical examinations made by some of her treatment providers (Tr. 555, 639, 709, 731), these notes were on isolated instances that did demonstrate that Plaintiff's level of hygiene was such that it would have had a detrimental effect on her employability.  Contrary to Plaintiff's assertions, the evidence in the record supports the ALJ's conclusion that Plaintiff's limitations in this domain were mild.  In fact, most treatment

records made before and after the isolated episodes describing her poor hygiene, demonstrated that Plaintiff actually had a well-groomed appearance and *adequate* hygiene during her examinations. Tr. 299, 303-04, 490, 493, 496, 567, 657, 660.  What is more, none of Plaintiff's treating providers raised a concern about Plaintiff's foul body odor or her inadequate self-care that would limit any of her functioning.  *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say.").  The record also demonstrates that during her examinations, Plaintiff had normal mood and affect, was alert and oriented, controlled her temper, was able to get along with others, and was able to advocate for her medical care (Tr. 51-52, 258, 261, 271, 279, 535, 555, 561, 567, 579, 590, 606, 639, 654, 657, 660, 666)–the characteristics of the adapting and managing oneself domain that were properly considered by the ALJ to find Plaintiff being only mildly limited in this domain.

Even though Plaintiff does not argue that her depression should have been found severe, she, nonetheless, submits that the ALJ erred by failing to consider it in the RFC analysis.  ECF No. 17-19.  The Court disagrees.  Generally, the ALJ is free to determine a claimant's RFC based on his review of the entire record and has to consider both severe and non-severe impairments when assessing a claimant's RFC.  *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe [ ]' . . . when we assess your [RFC] . . . .").

In support of her argument, Plaintiff cites *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012), where the Second Circuit found an error in the ALJ's failure to consider functional limitations stemming from plaintiff's non-severe mild mental impairments in the RFC analysis. *Id*. at 18 (the error at Step Two was not harmless when the ALJ, "[h]aving found that any functional

9

limitations associated with [plaintiff's] mental impairment were mild and only minimally affected her capacity to work, . . . did not take these restrictions into account when determining [plaintiff's] residual functional capacity"). However, *Parker-Grose* is distinguishable from the present case because the record in that case did not support the ALJ's conclusion that plaintiff's depression was non-severe. *Id.* at 17. Unlike the record in *Parker-Grose*, the record in the present case does not support a finding that Plaintiff's depression was severe for the reasons discussed above. What is more, in conducting his RFC analysis, the ALJ explicitly considered Plaintiff's depression when he referred to Plaintiff's hearing testimony about "severe depression," discussed the lack of any emergency treatment or hospitalizations for depression in the record, and the positive effect that Plaintiff's medication had on her ability to control her psychiatric symptoms. Tr. 17. He noted Plaintiff's employment during the period of disability and her activities of daily living and also weighed the opinion of the consultative examiner Dr. Ransom–the only opinion regarding Plaintiff's mental limitations contained in the record. Even though he did that only in Step Two of the analysis, the Court does not find that to be erroneous because the ALJ discussed the inconsistency of Plaintiff's allegations of the limiting effects of her symptoms to the medical and other evidence in the record in Step Four of the analysis. *See, e.g.*, *Sirris v. Comm'r of Soc. Sec.*, No. 18-CV-1087-MJR, 2020 WL 5105110, at *9 (W.D.N.Y. Aug. 31, 2020) (the ALJ considered plaintiff's non-severe impairments in Step Four when he discussed plaintiff's testimony and daily activities in his RFC analysis); *Goettel v. Comm'r of Soc. Sec.*, No. 1:18-CV-1285 (WBC), 2019 WL 6037169, at *6 (W.D.N.Y. Nov. 14, 2019) (the ALJ properly considered non-severe mental impairments in Step Four when he noted medical opinions contained in the record and analyzed plaintiff's allegations of limitations against medical findings and plaintiff's activities of daily living).

Plaintiff also argues that the RFC determination was flawed because it did not provide for the need to keep her legs elevated throughout a day. ECF No. 11-1 at 20-21. In support of her argument, Plaintiff mainly relies on her history of edema, pulmonary embolus, and venous insufficiently, as well as the notes of some of her treatment providers instructing her to keep her legs elevated. *Id*. However, even though the ALJ found these conditions to be severe, the record does not contain one medical opinion from any of her treating sources requiring Plaintiff to keep her legs elevated. Plaintiff admits that the record is silent as to any such opinion, but argues that the ALJ was, nonetheless, required to explicitly acknowledge this limitation in his decision. ECF No. 14 at 2. This argument is not persuasive because it has been well-established that the ALJ is not required to reconcile every piece of contradictory medical evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir.2012) ("[A]n ALJ is not required to discuss every piece of evidence submitted."). Moreover, the regulations provide that it is the ALJ, and not a claimant's medical providers, who are tasked with making an RFC determination based on the review of the entire record. *See* 20 C.F.R. § 404.1527 (d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . . , your [RFC] . . . , or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.").

Even though some of Plaintiff's providers mentioned the need for Plaintiff to keep her legs elevated, most of the evidence related to edema, pulmonary embolus, and venous insufficiency does not contain any such restriction. Specifically, even though during her visit with consultative examiner Dr. Figueroa, Plaintiff noted her history of venous insufficiency and complained of the swelling of her legs due to prolonged standing or sitting, Dr. Figueroa did not opine that Plaintiff

had to keep her legs elevated when she limited her repetitive kneeling, squatting, and crawling. Tr. 307-11. The record is clear that Plaintiff's edema[5]–the swelling of her legs, as well as ulcers on her legs, related to venous insufficiency, which she claimed to have been suffering from long before the alleged onset date. Tr. 293, 307, 617, 626, 629. While there is evidence of Plaintiff having swollen legs during some of her physical examinations, the record also demonstrates normal examinations where Plaintiff did not exhibit any signs of edema, or where the swelling of her legs was normal or improved with treatment. Tr. 507, 553, 567, 580, 617, 639, 651, 654, 672, 679, 682, 713.

Notably, when Plaintiff saw her treating physician Dr. Ohira in June 2017 for edema and several weeping wounds on her legs caused by a minor trauma of her shins, Dr. Ohira prescribed Plaintiff an antibiotic and referred her to the ECMC Center for Wound Care and Hyperbaric Medicine ("wound clinic") for treatment. Tr. 639-40. At no point during his original examination or subsequent follow-up appointments, did he require Plaintiff to keep her legs elevated to improve the swelling of her legs or rid of leg ulcers. Tr. 636-55. Instead, he referred to the course of treatment Plaintiff received at the wound clinic that included proper cleansing of her wounds with soap and water, application of a dressing, and compression with ace wrap. Tr. 636-55. Indeed, the notes from Plaintiff's initial evaluation at the wound clinic to treat several open wounds on both her legs, as well as the swelling of her legs, demonstrate that the proper course of treatment for both conditions was to clean the affected areas, and apply ABD pad and Kelix dressing, as well as compression with ace wrap. Tr. 629. At the initial evaluation at the clinic, Dr. Jordan indicated that to heal her leg ulcers Plaintiff was required to control her edema, and stated that Plaintiff's

---

[5] The record refers interchangeably to Plaintiff's lymphedema or edema, both of which refer to the swelling of one's upper or lower extremities caused by excess lymphatic fluid collected in the body's soft tissues. *See* CLEVELAND CLINIC, *What is Lymphedema?* https://my.clevelandclinic.org/health/diseases/8353-lymphedema (last viewed Mar. 19, 2021).

"life-long use of compression stockings will be used for continued edema control." Tr. 631. He instructed Plaintiff to get fitted for compression stockings to reduce the swelling of her legs. Tr. 618. Notes from Plaintiff's subsequent visits to the clinic demonstrate the same course of treatment as she was originally prescribed, and even though Plaintiff was "educated on elevation" to relieve edema, Dr. Jordan indicated that the goal of Plaintiff's reduction of edema was through application of compression with ace wraps and Plaintiff's subsequent wearing of compression stockings to regulate venous pressure. Tr. 617-34. Therefore, based on the review of the record, the ALJ properly formulated Plaintiff's RFC without requiring her to keep her legs elevated during the day. The ALJ's RFC determination and restriction of Plaintiff to sedentary work with additional limitations was also consistent with notes from Plaintiff's treatment at the wound clinic, which indicated that Plaintiff's edema was aggravated by walking and standing. Tr. 16, 619, 621, 627.

In sum, because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, Plaintiff has failed to meet her burden to demonstrate that she had a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (plaintiff failed his duty to prove a more restrictive RFC). While Plaintiff may disagree with the ALJ's conclusions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25 (2d Cir. 2018) (internal citations and quotations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). Here, for the reasons stated above, the Court finds that the RFC determination was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is DENIED, and the Commissioner's motion for judgment on the pleadings (ECF No. 13) is GRANTED. The Commissioner's decision is hereby AFFIRMED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: March 26, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court